**David and Pamela SCHNUELLE,
Plaintiffs,**

v.

**C & C AUTO SALES, INC., Defendant,**

v.

**SAS Enterprises; Ray Flanagan d/b/a Full Moon Recovery Services, and Midwest Finance Corporation of Kansas, Inc., Third–Party Defendants.**

**No. 99–2253–JWL.**

United States District Court,
D. Kansas.

April 19, 2000.

Ronald L. Holt, Watkins, Boulware, Lucas, Miner, Murphy & Taylor, LLP, Kansas City, MO, for plaintiffs.

Joel W. Riggs, McMaster & McMaster, Wichita, KS, for C & C Auto Sales, Inc., defendant.

Thomas W. Collins, III, McDowell, Rice, Smith & Gaar, Kansas City, MO., for SAS Enterprises, Inc., Auto Finance of Kansas, Inc., Midwest Finance Corp. of Kansas, Inc., defendants.

## MEMORANDUM AND ORDER

LUNGSTRUM, District Judge.

This case arises from the sale of a used Chevrolet truck with a troubled title history. Plaintiffs, purchasers of the truck, filed suit based on defendant C & C Auto Sales, Inc.'s (hereinafter "C & C") alleged misrepresentations about the truck's mileage, transmission, and title. At present, however, only issues related to the truck's title are before the court. C & C has filed a motion to dismiss or, in the alternative, for judgment on the pleadings (Doc. 34), asking the court to rule on the portions of plaintiffs' complaint related to the truck's title. Plaintiffs have filed a motion for leave to amend their complaint in order to assert a claim for conversion against parties which repossessed the truck despite plaintiffs' allegedly superior title rights (Doc. 36). For the reasons set forth below, plaintiffs' motion to amend is granted and C & C's motion is retained under advisement pending a status conference after the defendants who will be implicated in plaintiffs' amended complaint have responded to the amended complaint.

### I. Relevant Facts[1]

Plaintiffs are farmers in Jansen, Nebraska whose farming operation includes the raising, transporting, showing, and breeding of cattle. In May, 1997, plaintiffs decided that they wanted to purchase a truck to use around their farm and to haul cattle. Plaintiff David Schnuelle visited C & C Auto Sales and inquired as to whether C & C had for sale a used truck capable of

---

1. Only the facts pertinent to the currently pending motions are set forth in detail here.

These facts are either uncontroverted or set forth in the light most favorable to plaintiffs.

hauling a large cattle trailer. C & C employee Willis Holle informed Mr. Schnuelle that no such truck was available at the time, but that he would contact Mr. Schnuelle when one became available. On June 9, 1997, Mr. Holle contacted plaintiffs and told them that he had found a truck that would meet their needs. The truck was a 1991 Chevrolet Silverado which C & C had purchased from USA Classics, Inc., an automobile pawn broker. On June 16, 1997, Mr. Schnuelle returned to C & C to view the truck and to decide whether or not to purchase it. In his deliberations, Mr. Schnuelle asked Mr. Holle whether the truck had good title. Mr. Holle responded that there were no title problems. Mr. Holle did not inform Mr. Schnuelle that C & C had purchased the truck from USA Classics. In reliance on the representations made by Mr. Holle, plaintiffs purchased the truck for $15,995 and drove it back to Nebraska on June 16, 1997.

Before plaintiffs had even possessed the truck for a year, however, they learned that there was a dispute over its ownership. In late 1997 or early 1998, Calvin Said, co-owner of SAS Enterprises (hereinafter "SAS"), informed plaintiffs that SAS had a superior claim of title to the truck. In a number of telephone conversations, Mr. Schnuelle encouraged SAS to file an action for replevin, assuring SAS that plaintiffs would continue to use the truck on their farm and not remove it to a remote location. Rather than file a legal action, SAS hired Ray Flanagan to repossess the truck from plaintiffs' Nebraska farm. In the late hours of a January evening in 1998, Mr. Flanagan completed the repossession. As a result of the repossession, plaintiffs were forced to rent a truck to enable them to haul cattle to scheduled appointments with bull semen purchasers in Denver and Canada. When the purchasers learned that plaintiffs' truck had been repossessed, however, they questioned plaintiffs' reputation and broke off the agreements. Plaintiffs did not regain possession of the truck until they repurchased it from SAS for $13,500.

Since first learning of the truck's potential title problems, plaintiffs have set out to uncover the history of the title. They have discovered that the truck was originally purchased by Herbert and Barbara Burnett from a dealer in Iberia, Missouri, on April 5, 1991. A Missouri Certificate of Title was issued to the Burnetts. On November 22, 1996, the Burnetts assigned title to Lowe Chevrolet, a dealer in Waynesville, Missouri. On January 21, 1997, Lowe Chevrolet sold the truck to SAS and reassigned the title to SAS on that same day. On February 18, 1997, SAS sold the truck to Scott and Karla Taylor. Under the terms of the sale, SAS accepted a personal check for $1,500 as a down payment and required the Taylors to execute a promissory note in favor of Sterling National Bank, a Missouri lender with which SAS had an existing relationship. SAS took a security interest in the form of a first lien on the truck. SAS endorsed the Certificate of Title to the Taylors, listing Sterling National Bank as a lienholder, but SAS physically retained the title. The Taylors' personal check was dishonored for lack of sufficient funds and the Taylors made no payments under the promissory note.

Thereafter, the Taylors fraudulently obtained a "clean" Missouri Certificate of Title by applying for a duplicate title in the Burnetts' name. On May 15, 1997, the Taylors traded the truck to USA Classics, a Missouri pawn broker, in return for a boat, trailer, and $7,000 cash. On June 10, 1997, USA Classics sold the boat to C & C, but C & C did not receive title at the time of purchase. On June 25, 1997, the Taylors assigned the clean title to USA Classics, and USA Classics reassigned it to C & C. This transfer of title occurred over a week after plaintiffs had purchased the truck from C & C. C & C assigned title to plaintiffs in late July, 1997. Thereafter, plaintiffs applied to the Nebraska Department of Revenue for a Nebraska Certifi-

cate of Title, which was issued on August 22, 1997.

## II. Relevant Procedural History[2]

Plaintiffs filed their original complaint (Doc. 1) against C & C on June 7, 1999. Four of the counts brought in the complaint involved, in part, the truck's troubled title history. In Count I, plaintiffs claim that C & C made fraudulent misrepresentations of material facts about the truck's title. In Count II, plaintiffs allege that C & C made negligent misrepresentations of material fact about the truck's title. In Count IV, plaintiffs allege that C & C breached the warranty of title when it sold the truck to plaintiffs. Finally, in Count V, plaintiffs claim that C & C's representations about the truck's title were deceptive and in violation of the Kansas Consumer Protection Act.

On August 6, 1999, C & C filed a third-party complaint (Doc. 5) against SAS and Ray Flanagan, asserting that "[i]f Defendant is liable to Plaintiffs for any damages resulting from alleged title defects and the vehicle's repossession, then Third Party Defendants, in turn, would be liable to Defendant/Third Party Plaintiff for all sums that may be adjudged against Defendant/Third Party Plaintiff in favor of Plaintiff based upon the alleged title problems and repossession." C & C asserted that the third-parties' repossession of the truck was "improper because Plaintiffs had good title to the vehicle, and S.A.S.'s security interest was no longer perfected when the vehicle was repossessed." Mr. Flanagan filed an answer to the third-party complaint (Doc. 16), denying the substantive allegations in C & C's complaint. Mr. Flanagan also moved for joinder of Midwest Finance Corp. of Kansas, Inc. (hereinafter "Midwest") as a third party defendant necessary for just adjudication (Doc. 17). Midwest and SAS are allegedly operated as one company by the same persons. The court granted the motion for joinder

(Doc. 21) and Mr. Flanagan filed a cross-complaint against SAS and Midwest. Unlike Mr. Flanagan, SAS filed no response of any kind to the third-party complaint. As a result, C & C filed a motion for entry of default judgment against SAS (Doc. 22). The court granted the motion and entered default judgment against SAS on C & C's third-party claims on January 26, 2000 (Doc. 30).

Now, plaintiffs seek leave to file an amended complaint (Doc. 36), adding an additional claim and party. Plaintiffs seek to add a claim for conversion against Mr. Flanagan, SAS, Midwest, and a new party, Auto Finance Corp. of Kansas, Inc. (hereinafter "Auto Finance"). Like the claims asserted in C & C's third-party complaint, plaintiffs' conversion claim alleges that the repossession of the truck in January, 1998 was unlawful because plaintiff's had "superior title" to the truck.

Also pending before the court is a motion by C & C to dismiss the portions of Counts I, II, IV, and V of plaintiffs' complaint related to representations which C & C allegedly made to plaintiffs about the truck's title (Doc. 34). C & C asserts that plaintiffs have failed to state a claim upon which relief can be granted in violation of Fed.R.Civ.P. 12(b)(6). Alternatively, C & C asserts that it is entitled to judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c). C & C's motion, like plaintiffs' newly asserted conversion claim, is based on the contention that plaintiffs had "good title" to the truck on the day that it was repossessed, making the repossession "wrongful." Thus, according to C & C, any damages suffered by plaintiffs stemming from problems with the truck's title were the result of the repossession, not the actions of C & C.

## III. Plaintiffs' Motion for Leave to File an Amended Complaint

■ At the heart of plaintiffs' proposed amended complaint is a new claim for con-

---

2. Only the procedural history pertinent to the currently pending motions, *i.e.*, related to the

truck's title, is set forth here.

version asserted against three parties already involved in this action and against a new party who has been aware of this action. The court grants plaintiffs' motion for leave to file an amended complaint as it relates to this conversion claim. Fed. R.Civ.P. 15(a) provides that leave to amend "shall be freely given when justice so requires." In determining whether to grant leave to amend, the court may consider such factors as undue delay, bad faith of the moving party, the prejudice an amendment may cause the opposing party, and the futility of amendment. *See Hom v. Squire,* 81 F.3d 969, 973 (10th Cir.1996) (citing *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962)); *accord Bauchman v. West High Sch.,* 132 F.3d 542, 559 (10th Cir.1997). Ultimately, whether to grant leave to amend a complaint is within the discretion of the district court. *See Bauchman,* 132 F.3d at 559 (citing *Hom,* 81 F.3d at 973).

■ The court finds it in the interests of justice to allow plaintiffs to bring all their claims related to the same set of facts in one action and sees no reason to prohibit plaintiffs from adding a claim for conversion. There is no evidence that plaintiffs are seeking to amend in bad faith, nor that the conversion claim is futile. Rather, it appears that the amendment sought is in response to factual issues raised in C & C's third-party complaint. The amendment will not cause undue delay or prejudice any defendant, as the parties have only recently begun discovery and the facts involved in the conversion claim have previously been plead in papers filed in this action. Finally, plaintiffs' motion was timely filed under the court's January 6, 2000 Scheduling Order, which established February 18, 2000 as the deadline for any motions to amend the pleadings or to add parties.

The court further finds that justice requires it to grant the addition of Auto Finance as a new party to this action. Plaintiffs allege that Auto Finance, SAS, and Midwest are essentially alter-egos of one another. They are controlled by Calvin Said and Sameer Said, who are the primary shareholders, directors, and officers of all three companies. The three companies operate out of one address and share the same registered agent for service of process. Auto Finance was allegedly formed by the Saids to act as a financing arm of SAS. When plaintiffs repurchased the truck from SAS following its repossession, plaintiffs were directed to make payments to Auto Finance. Thus, Auto Finance benefitted from the alleged conversion and is properly a party in this action. The court exercises its discretion to allow plaintiffs to amend their complaint to add the conversion claim against Auto Finance, SAS, Midwest, and Mr. Flanagan.

■ While plaintiffs' newly asserted claim for conversion was at the heart of their proposed amended complaint, the proposed amended complaint also contained slight changes in the prayers for relief asserted in the five claims originally brought against C & C. In its response to plaintiffs' motion for leave to amend, C & C makes three objections to these changes. First, C & C objects to the addition of plaintiffs' request for attorney fees in Counts I–IV. Under Kansas law, attorney fees are generally not allowed as damages absent statutory authority. *See Iola State Bank v. Biggs,* 233 Kan. 450, 459, 662 P.2d 563 (1983). In their reply, plaintiffs' concede that "with the exception of their claim in Count V brought under the Kansas Consumer Protection Act, they currently are not aware of any basis upon which they might be entitled to recover attorneys fees. Accordingly, Plaintiffs will withdraw the attorneys fees portion of their prayers for relief in Counts I–IV." In light of plaintiffs' concession, the court orders that the amended complaint not contain attorney fees provisions in the first four counts.

■ C & C's second objection to plaintiffs' proposed amended complaint is the addition of prayers for prejudgment

interest on the damages claims asserted in Counts I–V. The parties agree that, under Kansas law, the general rule is that prejudgment interest is not recoverable on unliquidated damages claims. *See Foster v. City of Augusta,* 174 Kan. 324, 332, 256 P.2d 121 (1953). The parties disagree, however, on whether any of plaintiffs' claims for damages are liquidated. Plaintiffs suggest, for example, that the damages represented by the $13,500 which plaintiffs paid to repurchase the truck from SAS was fixed and certain on the day on which plaintiffs signed the repurchase agreement. Plaintiffs' argument appears valid. Thus, at this time the court will allow plaintiffs to add the prayers for prejudgment interest. The court will defer to a later date the decision of whether or not plaintiffs are actually entitled to an award of prejudgment interest.

■ Finally, C & C objects to the prayer for punitive damages asserted in Count I of plaintiffs' original and proposed amended complaints. C & C argues that Kansas law bars the pleading of punitive damages unless the court enters an order allowing an amended pleading that includes a claim for punitive damages. *See* K.S.A. § 60–3703. While C & C may have correctly stated Kansas law as it applies to pleadings filed in Kansas state courts, courts in this district have repeatedly found that Fed.R.Civ.P. 9(g) governs the pleading of punitive damages in federal courts. *See, e.g., Baumann v. Hall,* 1998 WL 513008 (D.Kan. July 15, 1998); *Whittenburg v. L.J. Holding Co.,* 830 F.Supp. 557 (D.Kan.1993); *Heil v. Scholastic Book Fairs, Inc.,* 1997 WL 222407 (D.Kan. April 21, 1997). Fed.R.Civ.P. 9(g) requires claims for special damages to be stated specifically in the complaint. Therefore, the court finds that plaintiffs properly asserted their claim for punitive damages in their complaint and may again assert this claim in their amended complaint.

■ In light of the above discussion, the court grants plaintiffs' motion for leave to file an amended complaint. However, the amended complaint shall not include prayers for attorney fees in Counts I–IV. The amended complaint may add a new claim and party, and may include prayers for prejudgment interest and punitive damages.[3] The amended complaint shall be filed no later than April 28, 2000.

## IV. C & C's Motion to Dismiss for Failure to State a Claim or, Alternatively, for Judgment on the Pleadings

C & C seeks dismissal of the portions of plaintiffs' complaint related to representations made to plaintiff about the truck's

---

3. C & C's objections, and plaintiffs' responses to those objections, all assume that Kansas law governs plaintiffs' first five claims. The court questions the correctness of those assumptions. A federal court sitting in diversity must apply the substantive law of the state in which it sits, including that state's choice of law rules. *See Klaxon Co. v. Stentor Electric Mfg. Co.,* 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). Thus, this court looks to Kansas law to determine which state's laws should be applied. Kansas adheres to the rule of lex loci delicti (the place of the injury) for claims involving tort law, *see Ling v. Jan's Liquors,* 237 Kan. 629, 634, 703 P.2d 731, 735 (1985), and the rule of lex loci contractus (the place where the contract was made) for claims involving contract law, *see Simms v. Metropolitan Life Ins. Co.,* 9 Kan.App.2d 640, 642, 685 P.2d 321 (1984). It appears possible, then, that at least some of plaintiffs' claims are governed by Nebraska law. The court finds, however, that it need not decide this issue in order to rule on C & C's objections to plaintiffs' motion for leave to amend because Nebraska law on the recovery of attorney fees and prejudgment interest is similar in all relevant respects to Kansas law on these issues. *See Quinn v. Godfather's Invs., Inc.,* 217 Neb. 441, 444, 348 N.W.2d 893 (1984) ("As a general rule of practice in this state, attorneys' fees are allowed to the successful party in litigation only where such allowance is provided by statute."); *Land Paving Co. v. D.A. Const. Co., Inc.,* 215 Neb. 406, 407, 338 N.W.2d 779 (1983) (prejudgment interest may be recovered on claims that are liquidated, but not on claims that are unliquidated). Thus, the court's decision would not change if Nebraska law were applied. The court expects the parties to address choice of law issues in future filings with the court.

title. C & C asserts that plaintiffs have failed to state a claim upon which relief can be granted in violation of Fed.R.Civ.P. 12(b)(6). Alternatively, C & C asserts that it is entitled to judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c). C & C's motion is premised on the contention that plaintiffs had "good" title on the day that the truck was repossessed by SAS, making the repossession wrongful. Because all of plaintiffs' alleged damages related to title arise from the repossession, C & C argues that any claims related to title upon which plaintiffs may possibly recover are against SAS, not against C & C.[4] While C & C uses the term "wrongful repossession," rather than "conversion," to describe the actions taken by SAS in January of 1998, the two terms have essentially the same meaning under these facts. Thus, if the court were to issue a ruling on C & C's motion at this time, the court would, in all practicality, also be issuing a ruling on plaintiffs' newly asserted conversion claim. The court is reluctant to issue such a ruling without providing the defendants implicated in plaintiffs' conversion claim an opportunity to be heard. Therefore, the court will retain C & C's motion under advisement. C & C is directed to notify the court when the defendants have filed a responsive pleading to plaintiffs' amended complaint (or are in default) so that the court can hold a telephone status conference to establish a procedure whereby those affected by plaintiffs' conversion claim are given an adequate chance to address the issue.

**IT IS ACCORDINGLY ORDERED** that plaintiffs' motion for leave to file an amended complaint (Doc. 36) is granted.

The amended complaint shall be filed by April 28, 2000 and shall not include prayers for attorney fees in Counts I–IV.

**IT IS FURTHER ORDERED** that C & C's motion to dismiss or, alternatively, for judgment on the pleadings (Doc. 34) is retained under advisement and C & C is directed to notify the court when the defendants implicated in plaintiffs' amended complaint have filed a responsive pleading or are in default. Thereupon, the court will schedule a telephone status conference to establish procedures consistent with this order.

**IT IS SO ORDERED.**

---

4. Plaintiffs appear to interpret C & C's motion as asserting that C & C gave plaintiffs superior title to the truck at the time of sale. Based on this interpretation, plaintiffs argue that even if C & C gave them superior title, C & C still misrepresented the circumstances surrounding the title. Thus, plaintiffs are asserting that the "deceptive" elements of their claims are still met. The court interprets C & C's motion another way. Nowhere in the motion does C & C allege that it delivered good title to plaintiffs at the time of sale. Rather, C & C asserts that at the time the truck was repossessed, plaintiffs had superior rights to the truck pursuant to U.C.C. § 9–103. Therefore, any damages pled by plaintiffs relating to the truck's title arose from SAS's actions in wrongfully repossessing the truck, not from C & C's alleged misrepresentations. Thus, C & C is asserting that the damages elements of plaintiffs' claims (not the deceptive elements) cannot be sustained.