Donna C. JONES, Plaintiff,

v.

Mark KRAUTHEIM, M.D., Defendant.

No. 01–MK–2150(PAC).

United States District Court,
D. Colorado.

June 25, 2002.

Eric D. Dixon, Attorney & Counselor at Law, P.A., Portales, NM, for Plaintiff.

Edward David Bronfin, Kennedy & Christopher, P.C., Denver, CO, for Defendant.

## ORDER REGARDING MOTION TO DISMISS AND MEMORANDUM OPINION

KRIEGER, District Judge.

THIS MATTER comes before the Court on the Defendant's Motion to Dismiss Punitive Damage Claim Under C.R.S. § 13–64–302.5 (Motion) and the Plaintiff's Response thereto. The Court has considered the parties' written and oral legal arguments and based thereon,

**FINDS** and **CONCLUDES** as follows:

### I. JURISDICTION

This is a diversity action in which this Court has jurisdiction pursuant to 28 U.S.C. § 1332.

### II. FACTS AND PROCEDURAL HISTORY

Plaintiff alleges medical malpractice and requests a judgment awarding medical expenses, damages for pain and suffering and punitive damages. In the Motion, the Defendant contends that Plaintiff's prayer for punitive damages is untimely pursuant to Colorado state law embodied in C.R.S. § 13–64–302.5 and therefore must be dismissed.[1] The Plaintiff responds that such statute should not apply in a federal diversity action such as this because it conflicts with the Federal Rules of Civil Procedure.

### III. ISSUE PRESENTED

Section 13–64–302.5 of the Colorado Revised Statutes addresses claims for exemplary (punitive) damage awards sought against health care professionals. Subsection (3) prohibits a plaintiff from asserting a claim for exemplary damages in the initial complaint. The subsection authorizes amendment of the complaint after substantial completion of discovery and upon a showing of *prima facie* proof of a triable issue. The sole issue presented by the Motion is whether the restrictions of C.R.S. § 13–64–302.5(3) are applicable in a federal diversity action. This issue is one of first impression.

### IV. ANALYSIS

C.R.S. § 13–64–302.5(3) provides in pertinent part:

[i]n any civil action or arbitration proceeding alleging negligence against a health care professional, exemplary damages may not be included in any initial claim for relief. A claim for such exemplary damages may be asserted by amendment to the pleadings only after the substantial completion of discovery and only after the plaintiff establishes *prima facie* proof of a triable issue.

Ordinarily, federal courts sitting in diversity cases apply federal procedural law and state substantive law. *Hanna v. Plumer*, 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965); *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 116 S.Ct. 2211, 135 L.Ed.2d 659 (1996). However, sometimes the line between procedural and substantive law is difficult to draw. The Supreme Court has struggled for years to delineate the difference. *See,*

---

1. Presumably, the Defendant seeks to have the exemplary damage portion of the prayer stricken.

*Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); *Guaranty Trust Co. of New York v. York,* 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945); *Byrd v. Blue Ridge Rural Elec. Coop.,* 356 U.S. 525, 78 S.Ct. 893, 2 L.Ed.2d 953 (1958); *Hanna v. Plumer,* 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965).[2]

In *Hanna v. Plumer,* the Supreme Court articulated a two-part test for deciding whether state law with a procedural impact should apply in federal diversity actions. The *Hanna* test requires a court to first determine whether the state law in question directly conflicts with a federal rule of civil procedure. If there is a direct conflict, the federal procedural rule applies and the state provision does not.[3] If there is no direct conflict between the state statute and a federal rule, then a court must consider *Erie's* twin goals of discouraging forum shopping and avoiding inequitable administration of the law. *Walker,* 446 U.S. at 752–53; *Hanna,* 380 U.S. at 468.

Using this approach, I conclude that the provisions of C.R.S. § 13–64–302.5(3) do not directly conflict with any particular Federal Rule of Civil Procedure or the Federal Rules as a whole. Furthermore, the twin aims of *Erie* are best satisfied by applying the Colorado statute.

**A.** *Interplay Between C.R.S. § 13–64–302.5(3) and the Federal Rules of Civil Procedure.*

Using the *Hanna* approach, the first question posed is whether the state statute conflicts with any federal procedural rule. As many courts have noted, this is not a question of whether the federal rules and state law overlap. It is, instead, a question of whether a federal rule directly collides with state law, leaving no room for the state law's operation. *See, Burlington N. R.R. Co. v. Woods,* 480 U.S. 1, 107 S.Ct. 967, 94 L.Ed.2d 1 (1987) (quoting *Walker v. Armco Steel Corp.,* 446 U.S. 740, 100 S.Ct. 1978, 64 L.Ed.2d 659 (1980)). In this context, federal courts have consistently interpreted the federal rules with a sensitivity to important state interests and policies. *Gasperini v. Ctr. for Humanities,* 518 U.S. 415, 428 n. 7, 116 S.Ct. 2211, 135 L.Ed.2d 659 (1996).

■ Section 13–64–302.5(3) restricts a plaintiff's right to request exemplary damages against health care providers in two ways. First, the statute governs the timing of a plaintiff's request for an exemplary damage award. Such request may not be made in the initial complaint; it may be asserted only by amendment after the completion of discovery. Second, the statute conditions any such request upon a plaintiff's showing of *prima facie* proof of a triable issue. The Plaintiff in this matter contends that these provisions directly conflict with Rules 8, 9, 15 and 56 of the Federal Rules of Civil Procedure.

Although neither the parties nor the Court have found any reported decision that addresses the interplay between C.R.S. § 13–64–302.5(3) and the Federal

**2.** Following *Erie,* in *Guaranty Trust Co.,* the U.S. Supreme Court adopted a "outcome determinative" test, which required an analysis of whether the outcome in federal court litigation would be substantially the same as if the matter had been tried in state court. Then, recognizing that even purely procedural laws can affect outcome, the Court retreated from the *Guaranty Trust Co.* test in *Byrd,* directing that federal courts should balance the federal interest in a uniform process against the state interest in uniformity of result. Most recently, in *Hanna,* the Court adopted the two-part test which is applied here.

**3.** The one exception to this general rule is where the federal rule violates a constitutional principle. *See, Walker v. Armco Steel Corp.,* 446 U.S. 740, 749–50, 100 S.Ct. 1978, 64 L.Ed.2d 659 (1980); *Hanna v. Plumer,* 380 U.S. 460, 469–71, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965).

Rules of Civil Procedure, a number of federal courts have considered the applicability of state statutes regulating a plaintiff's right to request an award of exemplary or punitive damages. District courts in Idaho, North Dakota, Minnesota and Florida have concluded that such state statutes do not conflict with the Federal Rules of Civil Procedure.[4] District courts in Kansas, Illinois, Oregon, California and Florida have found conflicts between such statutes and the Federal Rules, but they do not agree as to which rule is implicated.[5] The only circuit court to have addressed the issue is the Eleventh Circuit which did so in *Cohen v. Office Depot, Inc.,* 184 F.3d 1292 (1999), *vacated in part on other grounds,* 204 F.3d 1069 (11th Cir.2000), *cert. denied,* 531 U.S. 957, 121 S.Ct. 381, 148 L.Ed.2d 294 (2000). In *Cohen,* the Eleventh Circuit Court of Appeals resolved the split in authority among the Florida district courts, holding that a Florida statute regulating exemplary damage claims conflicted with the provisions of Rule 8(a)(3), but not with Rules 8(a)(2) or 9(g).

Characterization of this spectrum of opinions into majority and minority viewpoints, as suggested by at least one commentator,[6] is overly simplistic. Each state statute regulating the assertion of exemplary damages is unique and many differ in purpose or effect from the Colorado statute. Some statutes are applicable to all actions in which exemplary damages are asserted.[7] In contrast, the Colorado statute applies only in actions brought against health care professionals. Some statutes were enacted with the purpose of limiting the amount or assertion of exemplary damages. Although no legislative history is cited by the parties, the Defendant persuasively argues that the effect, if not the purpose, of the Colorado statute is

**4.** *See, Windsor v. Guarantee Trust Life Ins. Co.,* 684 F.Supp. 630, 633 (D.Idaho 1988); *Nereson v. Zurich Ins. Co.,* 1992 WL 212233 at *2 (D.N.D. August 20, 1992); *Fournier v. Marigold Foods, Inc.,* 678 F.Supp. 1420, 1422 (D.Minn.1988); *Engele v. Indep. School Dist. No. 91,* 846 F.Supp. 760, 768 (D.Minn.1994); *Minnesota Pet–Breeders, Inc. v. Schell & Kampeter, Inc.,* 843 F.Supp. 506, 519 (D.Minn.), *aff'd.,* 41 F.3d 1242 (8th Cir.1994); *Zeelan Indus., Inc. v. de Zeeuw,* 706 F.Supp. 702, 705 (D.Minn.1989); *Northwest Airlines, Inc. v. American Airlines, Inc.,* 870 F.Supp. 1499, 1502 (D.Minn.1994); *Daines v. City of Mankato,* 754 F.Supp. 681, 704 n. 9 (D.Minn.1990); *Olson v. Snap Products, Inc.,* 29 F.Supp.2d 1027, 1034 (D.Minn.1998); *Laffey v. Indep. School Dist. 625,* 806 F.Supp. 1390, 1406 (D.Minn.1992), *aff'd.,* 994 F.2d 843, 1993 WL 152716 (8th Cir.1993), *cert. denied,* 510 U.S. 1054, 114 S.Ct. 715, 126 L.Ed.2d 680 (1994); *Teel v. United Techs. Pratt & Whitney,* 953 F.Supp. 1534, 1538–41 (S.D.Fla.1997); *Sanders v. Mayor's Jewelers, Inc.,* 942 F.Supp. 571, 575 (S.D.Fla.1996); *Al–Site Corp. v. VSI Int'l, Inc.,* 842 F.Supp. 507, 512 (S.D.Fla.1993).

**5.** *See, Schnuelle v. C&C Auto Sales Inc.,* 99 F.Supp.2d 1294, 1299 (D.Kan.2000) (conflict with FED.R.CIV.P. 9(g)); *Pruett v. Erickson Air-Crane Co.,* 183 F.R.D. 248, 250–52 (D.Or. 1998) (conflict with FED.R.CIV.P. 9(g)); *Jackson v. East Bay Hospital,* 980 F.Supp. 1341, 1353 (N.D.Cal.1997) (conflict with FED. R.CIV.P. 8(a)(3)); *Worthem v. Gillette Co.,* 774 F.Supp. 514, 516–17 (N.D.Ill.1991) (conflict with FED.R.CIV.P. 8(a)(3)); *Alexander v. University/Gainesville Healthcare Ctr., Inc.,* 17 F.Supp.2d 1291, 1292 (N.D.Fla.1998) (conflicts with FED.R.CIV P. 8(a)); *Tutor Time Child Care Sys., Inc. v. Franks Inv. Group, Inc.,* 966 F.Supp. 1188, 1190 (S.D.Fla.1997) (conflicts with both FED.R.CIV P. 8(a) and 9(g)); *State of Wisconsin Inv. Bd. v. Plantation Square Assocs., Ltd.,* 761 F.Supp. 1569, 1573–80 (S.D.Fla.1991) (conflicts with FED.R.CIV.P. 8(a)); *Citron v. Armstrong World Indus., Inc.,* 721 F.Supp. 1259, 1261–62 (S.D.Fla.1989) (conflicts with FED.R.CIV.P. 9(g)).

**6.** *See, Pleading Punitive Damages: An Erie Dilemma.* 58– FEB Bench & B.Minn. 17 (February, 2001).

**7.** IDAHO CODE § 6–1604, enacted as part of Idaho's tort reform scheme, applies in all civil actions as do FLA.STAT. § 768.72 and 735 Ill. Comp.Stat. ¶ 5/2–604.1 (West 1993).

somewhat narrower. Its effect is to delay the assertion of exemplary damages thereby allowing defendant health care professionals to benefit from the representation of attorneys paid by their professional negligence insurance through the discovery phase. One statute is significantly more detailed than the Colorado statute. It specifies that particular hearings must be conducted, findings made, and discovery limited.[8] Although most of the statutes require that some showing must be made in order to amend a complaint, two statutes require the plaintiff to establish more than a *prima facie* showing to support the amendment.[9]

In addition, the judicial analysis of the applicability of such statutes in federal diversity actions is not consistent. One decision offers little or no analysis.[10] Rather than applying the *Hanna* two-part test, one opinion assesses whether the state law is substantive or procedural on an *ad hoc* basis[11] and others focus upon whether the state law will affect the outcome of the litigation.[12] Interestingly, two decisions concluding that the state law must be overridden by the federal rules also conclude that application of the federal rules will result in the same outcome as the state law, which suggests that there is no conflict or collision.[13]

In light of these variances, and in the absence of binding authority, I am guided

by the reasoning of the Tenth Circuit Court of Appeals in *Trierweiler v. Croxton and Trench Holding Corp.*, 90 F.3d 1523 (10th Cir.1996), a case analyzing the applicability of a different Colorado statute. In *Trierweiler*, a diversity action, the Tenth Circuit Court of Appeals considered the applicability of C.R.S. § 13–20–602, which requires that within sixty days after the filing of a complaint alleging professional negligence, a plaintiff file an expert report certifying that the claims have substantial justification. Failure to timely file the report requires dismissal of the action.

Applying the *Hanna* two-part test, the Tenth Circuit first considered whether the statute conflicted with Rule 11 of the Federal Rules of Civil Procedure. The Tenth Circuit reasoned that FED.R.CIV.P. 11 and § 13–20–602 demonstrated a common "intent to weed unjustifiable claims out of the system". *Trierweiler*, 90 F.3d at 1540. Due to their similarity in purpose and the limited application of § 13–20–602 to professional negligence cases, the statute and Rule 11 could "exist side-by-side, . . . each controlling its own intended sphere of coverage without conflict". *Trierweiler*, 90 F.3d at 1540.

The court then considered the policies underlying the *Erie* family of cases, observing that in diversity cases, the outcome of the litigation in the federal court

---

**8.** OR.REV.STAT. § 18.535 specifies that affidavits with admissible evidence must be submitted with a motion to amend the complaint, the court must conduct a hearing within thirty days after the motion is filed and served and issue a decision within ten days after hearing. If no decision is rendered within ten days, the motion is deemed denied.

**9.** Section 32–03.2–11 of the North Dakota Century Code requires affidavits to establish the basis for the proposed claim as does MINN. STAT. § 549.191. CAL.CODE CIV.PROC. § 425.13 requires a showing of substantial probability of prevailing on the claim.

**10.** *See, Native American Services, Inc. v. Givens*, 213 F.3d 642, 2000 WL 328137 (9th Cir.(Idaho) (unpublished)).

**11.** *See, Schnuelle v. C & C Auto Sales*, 99 F.Supp.2d 1294 (D.Kan.2000).

**12.** *See, Jackson v. East Bay Hospital*, 980 F.Supp. 1341 (N.D.Cal.1997); *Worthem v. Gillette Co.*, 774 F.Supp. 514 (N.D.Ill.E.D. 1991).

**13.** *See, Worthem v. Gillette Co.*, 774 F.Supp. at 516; *Jackson v. East Bay Hospital*, 980 F.Supp. 1341 (N.D.Ca.1997).

should be substantially the same as it would be if tried in a state court. *Guaranty Trust*, 326 U.S. at 109. Implementation of the dual policies of *Erie* (discouraging forum shopping and avoiding inequitable administration of the laws) was best served by applying the Colorado certificate of review statute in a federal diversity action because if the Colorado statute was not applied, a plaintiff alleging professional negligence would be likely to use the federal forum rather than the state forum, thereby leading to the inequitable result of conferring a penalty on state plaintiffs as compared to those proceeding in federal court.

Stepping back from the practical result, the Tenth Circuit also noted that the policy underlying the Colorado statute was "bound up with [state created] rights and obligations." *Trierweiler*, 90 F.3d at 1541, citing *Byrd*, 356 U.S. at 535. The court found that the Colorado legislature intended to expedite the litigation process in cases filed against licensed professionals and to prevent the filing of frivolous actions. This manifested a substantive decision which federal courts should apply to professional negligence actions brought under diversity jurisdiction just as it would in actions brought in Colorado state courts. *Trierweiler*, 90 F.3d at 1541.

In this matter, the Plaintiff alleges a number of conflicts between C.R.S. § 13–64–302.5(3) and individual Federal Rules of Civil Procedure. She first argues that the Colorado statute conflicts with Federal Rule of Civil Procedure 8, subsections (a)(2) and (a)(3).

■ Rule 8(a) states, "a pleading which sets forth a claim for relief, whether an original claim, counterclaim, cross-claim or third-party claim, shall contain . . . (2) a short and plain statement of the claim showing that the pleader is entitled to relief." This is known as the "short and plain statement" rule which supercedes traditional pleading formalities. The rule requires only that a complaint give a defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests. I agree with the reasoning of the Eleventh Circuit in *Cohen* that a request for exemplary damages is not a "claim" within the meaning of Rule 8(a)(2); it is only a form of the relief prayed for as part of the claim. The facts underlying the claim can be stated in the initial complaint thereby satisfying both Rule 8(a)(2) and the state statute. Thus, there is no conflict between § 13–64–302.5(3) and Rule 8(a)(2).

The more relevant portion of Rule 8 is subsection (a)(3) which requires that a demand for judgment identify the remedy and the parties against whom relief is sought. Clearly, § 13–64–302.5(3) prevents a plaintiff from including a prayer for exemplary damages in the initial complaint and in any amended complaint without leave of court. This would create an obvious conflict between the statute and the rule were it not for the fact that Rule 8 imposes no timing requirement. In practical use, Rule 8 does not and cannot operate in isolation, but instead must be considered in conjunction with Rule 15, which anticipates liberal amendment of pleadings throughout the course of the litigation and, ultimately, to conform to the evidence and issues raised by the parties.[14] So long as a plaintiff has the opportunity to amend the initial complaint to comply with Rule 8(a)(3) before the issues are ultimately tried, there is no practical conflict between § 13–64–302.5(3) and FED.R.CIV.P. 8(a)(3).

The Plaintiff also argues that there is a conflict between C.R.S. § 13–64–302.5(3) and Rule 9(g). Rule 9(g) requires that when items of special damage are claimed,

---

14. *See, Monod v. Futura, Inc.,* 415 F.2d 1170    (10th Cir.1969).

they be specifically stated. As with Rule 8, Rule 9 contains no timing requirement and must be construed in conjunction with Rule 15. So long as a plaintiff can amend pleadings to state special damages in conformance with Rule 9(g) before the issues are tried, there is no practical conflict between the Colorado statute and the federal rules.[15]

The Plaintiff finally argues that there is a conflict between the Colorado statute and Rules 15, 26 and 56. No specifics have been argued and I can ascertain no apparent conflict. Indeed, the process specified in § 13–64–302.5(3) is consistent with each of these rules. Rule 15 is expressly consistent with § 13–64–302.5(3) because it authorizes amendment by motion after a responsive pleading has been filed with leave of court. *Ramirez v. Oklahoma Dept. of Mental Health,* 41 F.3d 584, 586–87 (10th Cir.1994); *Commissioner of Internal Revenue v. Finley,* 265 F.2d 885 (10th Cir.1959), *cert. denied,* 361 U.S. 834, 80 S.Ct. 87, 4 L.Ed.2d 76 (1959). The scope of discovery under Rule 26 is not limited by the Colorado statute. Because basic facts can and should be stated in the initial complaint, all facts relevant to a request for relief of exemplary damages would fall within permissible discovery under Rule 26. Nor is Rule 56 implicated. The filing of dispositive motions routinely occurs after the close of discovery and therefore would occur after an appropriate motion to amend is offered. In the event a motion is made for which the respondent requires additional discovery, Rule 56(e) authorizes such discovery prior to a responsive pleading being filed.

Finally, although not raised by the Plaintiff, I note that the purpose and the function of § 13–64–302.5(3) is consistent with the purpose and function of Rules 11 and 16. Like Rules 11 and 16, the effect of § 13–64–302.5(3) is to simplify litigation by preventing the waste of time and resources on frivolous claims. In addition, like the Colorado certification statute addressed in *Trierweiler,* § 13–64–302.5(3) is narrower in its application than any of the Federal Rules of Civil Procedure, applying only in professional negligence actions brought against health care providers. Because § 13–64–302.5(3) falls within the scope of the applicable federal rules and its purpose is consistent with them, I see no "direct collision" between § 13–64–302.5(3) and any specific federal rule or with the Federal Rules of Civil Procedure as a whole.

**B. *Satisfaction of the Twin Aims of the Erie Doctrine.***

In the absence of a direct conflict between the Federal Rules of Civil Procedure and § 13–64–302.5(3), the second analytical step is to apply the "outcome-determinative test in light of the twin aims of *Erie.*" See *Walker,* 446 U.S. at 752–53; *Trierweiler,* 90 F.3d at 1540. As noted earlier, the purpose of the *Erie* doctrine is to insure that the outcome of the litigation in the federal court is substantively the same as if the matter was tried in a state court. Thus the ultimate decision of whether to apply § 13–64–302.5(3) must be consistent with the dual policies of *Erie* —that of discouraging forum shopping and avoiding inequitable administration of the laws.

In enacting C.R.S. § 13–64–302, the Colorado legislature specifically articulated the public policy interests it intended the subsequent provisions to serve:

---

**15.** It is interesting to note that notwithstanding the applicability of § 13–64–302.5 in state court cases, the provisions of Colo.R.Civ.P. 8, 9 and 15 are essentially the same as their federal counterparts. This further suggests operational consistency between the procedural rules and the statute.

The general assembly hereby finds, determines, and declares that it is in the public interest to establish a consistent and uniformly applicable standard for the determination, amount, imposition, and distribution of exemplary monetary damages arising from civil actions and arbitration proceedings alleging professional negligence in the practice of medicine. It is the intent of the general assembly that any such exemplary damages serve the public purposes of deterring negligent acts and where appropriate provide a form of punishment that is in addition to the disciplinary and licensing sanctions available to the state board of medical examiners.

This statement articulates an overarching purpose of setting uniform standards for determination, amount and imposition of exemplary damages in actions against health care providers. The Defendant notes that awards of exemplary damages are rarely covered by professional liability insurance and that insurance carriers often are not obligated to defend against such requests. When exemplary damages are asserted early in litigation, the health care defendant may be required to retain private counsel or to incur additional legal fees in conjunction with such issues. This burdens such defendant with additional cost, changes the settlement dynamics and therefore affects the determination, amount and imposition of exemplary damages. The Colorado statute requires a sound factual basis for the assertion of exemplary damage claims, enabling the health care defendant to rely upon representation by its, his or her insurance carrier for the initial stages of the litigation and delaying settlement of such claims until facts have been shown to support them.

██ If C.R.S. § 13–64–302.5(3) is not applied in federal diversity actions, the legislature's objective of consistency in the determination, amount and imposition of exemplary damages against all health care providers will not be achieved. Plaintiffs not required to comply with § 13–64–302.5(3) in diversity actions will likely prefer the federal court to state court because the exemplary damages can be raised early in the litigation without factual development. Health care defendants in federal diversity actions may be disadvantaged over those named in actions brought in state court either because they must obtain private representation to address exemplary damage issues early in the litigation or because they must consider early settlement to avoid such expenses. Such result, even in a few cases, defeats the objective of the Colorado statute, increases the danger of forum shopping and results in inequitable application of the law.

## V. CONCLUSION

Having concluded that there is no direct conflict between the Federal Rules of Civil Procedure and C.R.S. § 13–64–302.5(3), I further conclude that failure to apply such statute would contravene an important state interest, tend to promote forum shopping and result in inequitable administration of the laws.

**IT IS THEREFORE ORDERED** that Defendant's Motion is hereby **GRANTED,** with modification. Plaintiff's prayer for punitive damages is **STRICKEN.** An answer shall be filed **within ten days** of the date of this Order.